NO. 13-414

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROBERT ADAIR, on behalf of himself and
all others similarly situated,

*Plaintiff-Respondent*,

v.

EQT PRODUCTION COMPANY,

*Defendant-Petitioner*.

On Appeal from the United States District Court for the
Western District of Virginia, Case No. 1:10-cv-00037

## ANSWER TO PETITION OF EQT PRODUCTION COMPANY
## FOR PERMISSION TO APPEAL ORDER GRANTING
## CLASS CERTIFICATION

THE WHITE LAW OFFICE
Jackson S. White, Jr., VSB #03677
P. O. Box 286
Abingdon, VA 24212
Telephone:  (276) 619-3831
Facsimile:   (815) 550-2930
jackwhite@whitelawoffice.com

LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP
David S. Stellings
Daniel E. Seltz
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592
dstellings@lchb.com
dseltz@lchb.com

*Attorneys for Plaintiff-Respondent ROBERT ADAIR*

*[additional counsel listed on signature page]*

1137291.1

# TABLE OF CONTENTS

**Page**

I.    Introduction ........................................................................... 1

II.   Factual Background ............................................................... 3

III.  Legal Standard ...................................................................... 8

IV.  Argument ............................................................................... 9

     A.    Whether Coal Owners Are Necessary Parties Has No
          Bearing on the District Court's Careful Rule 23 Analysis. ......... 10

     B.    The Examination of Severance Deeds Has No Bearing on
          the District Court's Careful Rule 23 Analysis. ........................... 12

     C.    EQT's Schedules Are Based On Uniform Policies and
          Were Presented With a Sworn Affidavit. ................................... 15

     D.    The Class Is Not "Fail-Safe." ................................................... 16

     E.    Plaintiff's Claims for Royalty Underpayments on the
          Uniform Deemed Leases Are Suitable for Class
          Adjudication. ............................................................................ 18

     F.    The Status of the Case Weighs Against Granting EQT's
          Petition. .................................................................................... 19

V.    Conclusion ............................................................................ 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Addison v. CNX Gas Co., LLC*,
   2012 U.S. Dist. LEXIS 106914
   (W.D. Va. Aug. 1, 2012) ........................................................ 11

*Adkins v. EQT Prod. Co.*,
   2012 U.S. Dist. LEXIS 43171 (W.D. Va. Mar. 28, 2012) ................................... 6, 14

*Brown v. Nucor*,
   576 F.3d 149 (4th Cir. 2009) ........................................................ 9

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
   6 F.3d 177 (4th Cir. 1993) ........................................................ 9

*Genenbacher v. Centurytel Fiber Co.*,
   244 F.R.D. 485 (C.D. Ill. 2007) ........................................................ 17

*Gunnells v. Healthplan Servs.*,
   348 F.3d 417 (4th Cir. 2003) ........................................................ 9

*Harrison-Wyatt, LLC v. Ratliff*,
   593 S.E.2d 234 (Va. 2004) ........................................................ 5, 6

*Lienhart v. Dryvit Sys. Inc.*,
   255 F.3d 138 (4th Cir. 2001) ........................................................ 1, 8

*Lindsay Transmission, LLC v. Office Depot, Inc.*,
   2013 U.S. Dist. LEXIS 9554
   (E.D. Mo. Jan. 24, 2013) ........................................................ 17

*Melton v. Carolina Power & Light Co.*,
   2012 U.S. Dist. LEXIS 87205
   (D.S.C. Jun. 25, 2012) ........................................................ 16, 17

*Prado-Steiman v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ........................................................ 19

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Randleman v. Fidelity Nat'l Title Ins.*,
   646 F.3d 347 (6th Cir. 2011)......................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................16

*Windham v. American Brands, Inc.*,
   565 F.2d 59 (4th Cir. 1977)......................................................9

## RULES

Fed. R. Civ. P. 23(d).....................................................................11

## STATUTES

Va. Code Ann. § 45.1-361.21 ........................................................5

Va. Code Ann. § 45-1-361.21 & 22 ..............................................3

## TREATISES

*Manual for Complex Litigation, Fourth*
   § 21.222 (Fed. Jud. Ctr. 2004).................................................16

## I.    <u>Introduction</u>

EQT Production Company's ("EQT's") petition ("Pet.") is without merit.

Because EQT's petition is simply a statement of several disagreements with the

conclusions set forth in the district court's 85-page opinion granting class certification

("Op."), EQT has staked its petition on the argument that the opinion contains a

"substantial weakness."  However, under this Court's standard for interlocutory

review of class certification orders, this avenue is available only "[i]n extreme cases,

*where decertification is a functional certainty*, [such that] the weakness of the

certification order may alone suffice to permit the Court of Appeals to grant review."

*Lienhart v. Dryvit Sys. Inc.*, 255 F.3d 138, 145 (4th Cir. 2001) (emphasis added).

EQT cannot show, as it must, that reversal of the district court's meticulously detailed,

fact-intensive decision is "virtually certain."  *Id.*

At the same time, other *Lienhart* factors militate strongly against granting

interlocutory review.  For example, the current status of the litigation makes this a

particularly poor candidate for interlocutory review.  Contrary to this Court's

statement that Rule 23(f) petitions should be "careful and sparing," *Lienhart*, 255 F.3d

at 145, EQT and the defendants in four related cases are asking this Court to grant *five*

separate interlocutory petitions.  And those petitions are being sought in cases that are

nearly *ready for trial*, after which defendants will be able to appeal as of right: these

cases have been litigated for more than three years; fact discovery is nearly over; and

the district court soon will consider and decide Plaintiffs' pending motions for summary judgment. EQT will soon have the opportunity to appeal the class certification decision, summary judgment decisions, and/or trial verdict together, in a single judicially efficient appeal. Interlocutory review makes no sense in these circumstances.

The Court should also deny EQT's petition because the court below considered and correctly applied all relevant appellate class action case law. The district court considered multiple rounds of class certification briefing; conducted two separate class certification hearings; spent more than fifty pages analyzing the evidence and making detailed findings of fact; applied those facts to the elements of Rule 23; and then held that this case is ideally suited for class certification.

Indeed, the court held that through its repeated misapplication of a single state statute, *EQT itself created* a class of identically situated people – those whom EQT identified in sworn public filings as owning gas estate interests in EQT's coalbed methane gas ("CBM") units, who were purportedly in conflict with coal interest owners. For decades EQT's actions deprived these (mostly poverty-stricken) class members of production revenues from the sale of their CBM, in contravention of a decision of the Virginia Supreme Court. The resolution of Plaintiff's and class members' claims turns predominantly on common questions of law and fact, as the district court's careful analysis concluded.

II.   **Factual Background**

This case arises out of EQT's decision to withhold royalties owed to Plaintiff

and class members on the sale of CBM attributable to their interests, based on EQT's

designation of illusory conflicting claims to the ownership of the CBM.

The Virginia General Assembly enacted the Virginia Gas and Oil Act, Va.

Code Ann. § 45.1-361.1 *et seq.*("Gas Act") in 1990, at a time of "uncertainty in

Virginia as to whether CBM was owned by those who retained rights to the gas

estate/interest or by those who owned the coal estate/interest in the land."  Dkt. No.

328, at 2.  The Gas Act allows an operator, such as EQT, to produce and sell CBM

when the CBM's ownership is uncertain or unknown, provided that royalties owed to

the CBM owner are "held pending identification and location of the owner or a final

agreement or a determination as to ownership of the CBM estate/interest."  *Id.* (citing

Va. Code Ann. § 45-1-361.21 & 22).

Pursuant to the Gas Act, EQT applied to the Virginia Gas and Oil Board

("Board") to establish forced pooling CBM units (units in which EQT failed to obtain

voluntary leases from all interests, including class members here).  As the court below

found, in exhibits to its applications to the Board, EQT listed two groups of potential

owners, one entitled "Gas Estate Only," and the other entitled "Coal Estate Only."

*See* Op., at 8.  The district court further found, "[e]ach EQT application stated, '[s]et

forth in Exhibit B is the name and last-known address of each owner of record

identified by [EQT] as having an interest in the oil, gas and coalbed methane underlying the unit…'" *Id.* at 8-9. EQT further represented to the Board that it had "exercised due diligence to locate each of the oil, gas and coalbed methane interest owners named herein at Exhibit B…'" *Id.* at 11.

The Board issued pooling orders that established EQT as the unit operator of CBM units based on EQT's applications. Each order found that EQT had, among other things, "exercised due diligence in conducting a meaningful search of reasonably available sources to determine the identity and whereabouts of each gas and oil owner, coal owner, or mineral owner and/or potential owner" in the unit. Op. at 9. The court below, reviewing numerous pooling orders and supplemental orders establishing escrow accounts for royalties attributable to each unit, found that EQT followed the same process for other tracts. *Id.* at 10-12.

The court below also held that the language of these orders, and the process that EQT followed in obtaining them, did not vary materially over time. *See Id.* at 21-22. Each of the sample pooling orders that the court examined "lists the owners of the surface, oil and gas and coal rights on each tract of land" and "contains an exhibit which lists those who own the 'Gas Estate Only' and those who own the 'Coal Estate Only' in the tracts contained in the drilling unit." *Id.* at 22. Furthermore, the district court noted that EQT's corporate representative testified that "all of EQT's forced-pooling applications were submitted to the Board under oath…." *Id.* at 42.

EQT's sworn statements to the Board concerning gas and coal ownership units were the result of uniform procedures to determine relevant ownership interests in each unit. As the court below found, EQT asked its attorneys to "certify ownership of the oil and gas underlying all of the subject tracts and … identify for notification purposes the owner of the surface estate and the owner and lessee, if any, of the coal estate." *Id.* at 34-36. The Court took note of several such requests, which EQT acknowledged "were representative of the requests that EQT made to attorneys to request title opinions on tracts of land." *Id.* at 42.

The uncertainty that spurred the passage of the Gas Act in 1990 ended in March 2004 with the Virginia Supreme Court's decision in *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 235 and 238 (Va. 2004). In that case, the Virginia Supreme Court rejected the defendant coal owner's assertion "that it, as the owner of the coal estate, owns the CBM." The court held that CBM is a gas and "is a distinct mineral estate" from coal, and that landowners (gas estate owners) retain the rights to CBM located on their property when they convey or lease coal rights. *Id.* at 234, 235 and 238. In 2010, the Virginia General Assembly codified that decision and enacted Va. Code Ann. § 45.1-361.21(1), which provides in relevant part, "A conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas." Va. Code Ann. § 45.1-361.21(1).

State courts in Virginia have applied *Harrison-Wyatt*'s holding accordingly, repeatedly and uniformly backing gas interest owners in disputes with coal owners over CBM ownership. *See* Op. at 66-67 ("Virginia circuit courts continue to interpret the *Harrison-Wyatt* opinion as clearly deciding that a conveyance of coal rights does not convey the rights to the CBM."). EQT does not cite a single case holding otherwise, and Plaintiff remains unaware of any. One leading jurist on CBM issues in Virginia, Judge Keary Williams, has held, "the law is settled on the issue of CBM ownership where there is a conveyance, reservation, or exception of coal…" *See Adkins v. EQT Prod. Co.*, 2012 U.S. Dist. LEXIS 43171, at *25 (W.D. Va. Mar. 28, 2012) (quoting *Pobst, et al. v. Garden Realty Corp.*, No. 486-08, slip op. at 2-3).

Despite the *Harrison-Wyatt* ruling, the state court decisions that followed it, and the state statute, EQT did not change its pooling order application practices. Rather, it continued to designate illusory conflicts and continued to withhold royalty payments from their rightful owners. At the same time, as the court below recounted in detail, there has been no full accounting of EQT's payments into the state escrow account, and substantial evidence exists of EQT's failure to pay the proper amounts into the account. *See* Op. at 24-30 (describing delayed payments and underpayment of $860,000 over the life of one well).

As a result of EQT's actions, and in defiance of settled Virginia law, proceeds attributable to Plaintiff's and class members' interests have been, or were supposed to

have been, placed into the state escrow account. According to the latest report from the state escrow agent, there are now 405 units attributable to EQT in the escrow account, totaling more than $7.2 million. More than half of the subaccounts attributable to those units contain less than $5,000; nearly one-third contain less than $1,000. Plaintiff and class members have received none of those funds.

Plaintiff filed this case on June 15, 2010. His amended complaint seeks a declaration that the conflicts that EQT itself designated as between those whom EQT identified as owning gas estate interests and those whom EQT identified as owning coal estate interests (and not gas interests) are illusory; a full accounting; and damages under tort claims for failure to pay the proper amount of royalties owed.

Following extensive briefing, which included documents and excerpts of deposition testimony adduced during more than a year of fact discovery, and after a full day of oral argument, Magistrate Judge Sargent issued an 85-page Report and Recommendation ("Report") on Plaintiff Adair's motion for class certification and motions by other plaintiffs in related cases against EQT and CNX. The Report included an exhaustive summary of the evidence, and a lengthy analysis of the Rule 23 factors. EQT submitted 55 pages of objections, and Plaintiff a 42-page response. The district court held a three-hour-long hearing on EQT's and CNX's objections, and denied EQT's objections on September 30, 2013, while setting forth a class definition that – consistent with the court's Rule 23 analysis – modified the definition that

Plaintiff originally had proposed.  Plaintiff subsequently moved for summary

judgment on three issues, including the question of whether EQT has designated

ownership conflicts that do not exist as a matter of law.  EQT will respond to those

motions by November 5, 2013.

## III.    <u>Legal Standard</u>

EQT lists the five bases for interlocutory appeal under Rule 23(f) (Pet. at 8), as

held in *Lienhart*, 255 F.3d at 144, but then ignores them.[1]  Although this Court

referred to these factors as working on a "sliding scale," *id.* at 145, EQT bases its

petition solely on the purported "substantial weakness" of the opinion.  But this can be

the sole basis for a petition for leave to appeal only "[i]n extreme cases, *where*

*decertification is a functional certainty*, [such that] the weakness of the certification

order may alone suffice to permit the Court of Appeals to grant review."  *Id.*

(emphasis added).

The threshold for accepting an interlocutory appeal of a class certification

decision is high, in part, because a district court "has broad discretion in deciding

whether to certify a class."  *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 424 (4th Cir.

---

[1] The five *Lienhart* factors are:  "(1) whether the certification ruling is likely
dispositive of the litigation; (2) whether the district court's certification decision
contains a substantial weakness; (3) whether the appeal will permit the resolution of
an unsettled legal question of general importance; (4) the nature and status of the
litigation before the district court (such as the presence of outstanding dispositive
motions and the status of discovery); and (5) the likelihood that future events will
make appellate review more or less appropriate."  *Lienhart*, 255 F.3d at 144.

2003) (internal quotation omitted). In reviewing class certification, this Court does not ask "whether we would have come to the same conclusion as the district court if we were examining the matter *de novo*." *Brown v. Nucor*, 576 F.3d 149, 161 (4th Cir. 2009). In cases like this one, where the district court "conducted a careful Rule 23 analysis, and supported each of its 23(a) and 23(b)(3) holdings with detailed findings," this Court should be especially "reluctant to conclude that the district court abused its considerable discretion[.]" *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 186 (4th Cir. 1993). The high standard also reflects this Court's recognition that class certification is "a practical problem, and primarily a factual one with which a district court generally has a greater familiarity and expertise than does a court of appeals." *Windham v. American Brands, Inc.*, 565 F.2d 59, 65 (4th Cir. 1977).

## IV.    **Argument**

EQT's arguments in support of interlocutory appeal concern only matters of discretion that the district court exercised after "a careful Rule 23 analysis," and in connection with "detailed findings." *Cent. Wesleyan Coll.*, 6 F.3d at 186. EQT's arguments focus on factual questions that can and will be resolved on a class-wide basis, but they reveal no "substantial weakness" in the district court's opinion that merits interlocutory review.

1137291.1

A.    **Whether Coal Owners Are Necessary Parties Has No Bearing on the District Court's Careful Rule 23 Analysis.**

EQT argues that coal owners are necessary parties to this case, but does not link this argument to any aspect of Rule 23 or to any weakness in the district court's decision, let alone a "substantial" one. EQT's argument is simply an attempt to shoehorn an appeal of a prior adverse ruling into this petition. When EQT moved to dismiss Plaintiff's amended complaint in which he elected to proceed against EQT as the sole defendant, EQT unsuccessfully argued that the coal owners were necessary parties. The district court's denial of EQT's motion to dismiss is not within the scope of EQT's petition for leave to appeal the class certification order.

Even if the question of the presence of coal owners were properly part of this appeal, EQT fails to identify any weakness in the district court's analysis on this point. First, EQT's "necessary party" objection actually *supports* the district court's decision to certify the class, because like several other legal issues raised by EQT, it poses a class-wide question with an answer common to all class members.

EQT's coal owner argument also is off-base because while it argues that coal owners should be heard in this action, EQT neglects to inform this Court that when the district court permitted Plaintiff and those in the related cases leave to amend their complaints to name only the gas operators as defendants, four major coal companies successfully moved to intervene in the companion cases pending against CNX. None

of those coal companies moved to intervene in this case or in any other case against EQT.

Further, as the district court itself has recognized in the related *Addison* case, as part of the court's broad class action case management powers, *see* Fed. R. Civ. P. 23(d), the Court may order that "appropriate notice" be sent to coal owners, allowing, to the extent it is necessary and appropriate, participation in this case as it progresses. *See Addison v. CNX Gas Co., LLC*, 2012 U.S. Dist. LEXIS 106914, at *8-9 (W.D. Va. Aug. 1, 2012). As the parties negotiate class notice over the coming weeks, the district court is well equipped to address EQT's concerns about the presence of coal owners.

Finally, EQT's argument is based on a mischaracterization of the relief Plaintiff seeks in this case. The district court recognized that, rather than an "all-encompassing judicial determination of ownership," as EQT characterizes it, Plaintiff seeks a declaration that, "based on the *Harrison-Wyatt* opinion, a conveyance, reservation or exception of coal does not include CBM as a matter of law, and, therefore, no CBM ownership conflict exists as a matter of law between a person owning the gas estate interest in a CBM tract and a different person owning the coal estate interests in the tract." Op. at 67. Plaintiff has filed a motion for summary judgment that seeks this declaration, which is properly focused on EQT's conduct and the application of settled Virginia law, and does not require the presence of coal owners to decide.

**B.**    <u>The Examination of Severance Deeds Has No Bearing on the District Court's Careful Rule 23 Analysis.</u>

As with its argument concerning the presence of coal owners, EQT does not link its lengthy discussion of severance deeds to any purported weakness in the district court's opinion. Pet. at 11-14. In fact, its section does not mention the opinion at all. This is because the opinion carefully considered EQT's argument that examination of individual severance deeds is necessary to determine CBM ownership, and rejected it because it "ignores the relief sought" and the class definition, neither of which require examination of individual deeds. Op. at 70. EQT's argument is simply an attempt to create individualized issues unconnected to the claims that it actually faces here.

The district court set forth the factual basis for its conclusion that individual deed examination was unnecessary. It found that EQT's pooling order applications asserted conflicting claims to CBM ownership between gas estate owners and coal estate owners, including an affidavit that attested to EQT's due diligence in identifying accurately those purportedly conflicting claims. Op. at 69. In addition, the district court found, "The evidence before the court is that EQT always reported conflicting claims of ownership to the CBM for any tract for which the title examination showed different persons owned the gas and the coal estates." *Id.* at 70. In other words, but for EQT's actions, which it applied uniformly to the class (a class it itself created), there would be no designation of conflict and no need to escrow the

CBM royalties.  Instead, Plaintiff and class members would long ago have been receiving those royalties.

Because EQT already identified Plaintiff and class members as gas estate owners, the district court recognized that the relief Plaintiff seeks is limited to a "declaratory judgment that all CBM royalties held in escrow or suspense due to alleged conflicting claims of CBM ownership between persons who operators identified as owning the gas estate and persons they identified as owning the coal estate and ***not*** the gas estate, be paid to the persons identified as owning the gas estate."  Op. at 70 (emphasis in original).  This requires only the application of *Harrison-Wyatt*, an issue "subject to a common resolution."  *Id.* at 67.  As the district court held, even as it acknowledged that the language of deeds severing the coal estate may vary (Op. at 70), Virginia courts uniformly have held that the holding in *Harrison-Wyatt* is not limited to the deed in that case, but rather is a general rule that "a conveyance of coal rights does not convey the rights to the CBM."  (*Id.* at 66-67.)  No individual deed examination is necessary or appropriate.

There is no error in the court's conclusion.  The district court's finding that individual title examinations are not required also is consistent with the text of the Act, which does not require conflicting claimants to establish title, or to establish that the operator has properly named them in the pooling order, any more than it requires non-conflicting claimants to establish title prior to receiving their royalties from the

gas operator. Instead, all parties may — indeed must — rely on the due diligence and work performed by EQT in identifying conflicting claimants. That due diligence has been sufficient for more than two decades for EQT to receive *seven-eighths* of the proceeds from the sale of class members' CBM gas; it is enough now to allow Plaintiff and the class members to seek their one-eighth.

EQT also relies upon a 2004 press release from the Department of Mines, Minerals and Energy ("DMME") concerning *Harrison-Wyatt* to support its argument that examination of individual deeds is required. (Pet. at 12-13.) But, as the district court recognized, Virginia courts have applied *Harrison-Wyatt* as a generally-applicable rule – that a severance of coal does not include CBM – since the decision. *See* Op. at 66-67 (citing *E.L.E., LLC* and *Belcher* cases). Whatever the DMME's interpretation immediately after the decision, the law is now "settled" on this question. *Adkins*, 2012 U.S. Dist. LEXIS 43171, at *25 (quoting *Pobst*, No. 486-06, slip. op. at 2-3).

EQT also points to the Gas Act's arbitration provision, which requires the arbitrator to have expertise in mineral title examination, as evidence that class members must repeat the work that EQT already conducted before they can receive their royalties. Pet. at 13. That provision has never been used, as EQT has conceded. Further, although there may be situations where such expertise is required in genuine title disputes, that is not the case here, where there is only a binary determination as

between gas owners identified by EQT on the one hand, and coal owners identified by EQT on the other. Moreover, EQT adduced no evidence to support its claim that the legislature intended (as-yet hypothetical) arbitrators to replicate EQT's work.

The district court properly rejected EQT's argument that trial courts should, over hundreds of individual cases, assess individual deeds to determine property ownership. As the court found, this is not a case about determining property ownership generally. It involves a straightforward application of Virginia law to address a situation that EQT created through the designation of illusory ownership conflicts. By identifying the actual relief sought, not the relief that EQT mischaracterized, the district court properly exercised its discretion.

## C.    EQT's Schedules Are Based On Uniform Policies and Were Presented With a Sworn Affidavit.

The district court found that EQT submitted sworn affidavits to the Board, which attested to its due diligence in identifying all ownership interests in its CBM units, and that those affidavits and applications reflected uniform policies aimed at determining ownership. *See* Op. at 8-12, 21-22, 35, 42, 70. EQT undertook those efforts and made those sworn representations so that it could produce and sell CBM gas, and keep 7/8ths of the proceeds from those sales. EQT now says that no one should rely on its schedules of owners of "gas estate only" and "coal estate only," because these were mere "labels." Pet. at 14. This is both factually incorrect, as the district court exhaustively detailed in setting forth EQT's practices, and irrelevant to

class certification, because EQT, again, does not cite to any specific error in the opinion.

For purposes of class certification, EQT's ownership conflict designations raise a question common to all class members: Under Virginia law, is the conflict that EQT designated as between gas interest owners and those who own coal interests but not gas interests, a true conflict, or is it an illusory one? Although EQT may disagree with the answer to that question, it cannot dispute that, either way, answering it is "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotation omitted).

### D.    The Class Is Not "Fail-Safe."

The district court properly certified a class that "avoid[s] subjective standards (e.g., a class member's state of mind) or terms that depend on resolution of the merits (e.g., 'persons who were discriminated against')." *Manual for Complex Litigation, Fourth* § 21.222, at 270 (Fed. Jud. Ctr. 2004) ("*MCL*"). As such, the class is not "fail-safe," which, as one of the cases that EQT cites holds, is one where the "putative class is defined by reference to the merits of the claim." *Melton v. Carolina Power & Light Co.*, 283 F.R.D. 280, 288 (D.S.C. 2012).

The class definition here does not turn on any merits determinations. It is based on purely objective factors – EQT's identification of unleased gas interest owners as being in conflict with those whom EQT identified as owning coal interests and not gas

interests. Although EQT asserts that the class is fail-safe because it "consists of people who own gas and the conflicting claimants are people who do not own gas" (Pet. at 15), EQT conflates gas ownership, which EQT itself researched and presented to the Board, and which is objectively determined by reference to EQT's submissions, with entitlement to CBM proceeds, a merits question that the Court has not decided yet (indeed, this is why Plaintiff moved for summary judgment on this question). The district court's opinion made this distinction clearly. After noting that the plaintiffs "seek judgment that they, as gas owners, are entitled to the CBM royalties withheld," it went on: "Whether such relief may be granted by this court based on the *Harrison-Wyatt* decision – or not – is a question held in common by each of the named plaintiffs and the proposed class members in these four cases and is subject to a common resolution." Op. at 67.[2] The class is not a fail-safe class.

---

[2] EQT's authority (Pet. at 15-16) highlights the difference between this objectively defined class (which starts with documents prepared by EQT) and cases that require a merits determination to determine class membership. *See Randleman v. Fidelity Nat'l Title Ins.*, 646 F.3d 347, 352 (6th Cir. 2011) (noting that previous class included only those who were "entitled to relief"); *Lindsay Transmission, LLC v. Office Depot, Inc.*, 2013 U.S. Dist. LEXIS 9554, at *10 (E.D. Mo. Jan. 24, 2013) ("[T]he proposed class includes only those persons to whom defendant sent faxes without prior consent and with whom defendant did not have an established business relationship. Thus, the proposed class consists solely of persons who can establish that defendant violated the TCPA."); *Melton*, 283 F.R.D. at 289 (holding that class definition embedded a merits determination); *Genenbacher v. Centurytel Fiber Co.*, 244 F.R.D. 485, 487-88 (C.D. Ill. 2007) (class definition based on a class member not having consented to the installation of fiber optic cables).

**E.**   **Plaintiff's Claims for Royalty Underpayments on the Uniform Deemed Leases Are Suitable for Class Adjudication.**

Again untethered to any of the five *Lienhart* factors or to any purported weakness in the district court's opinion, EQT argues that Plaintiff's claims for EQT's underpayment of royalties should not be certified. In three short paragraphs, EQT manages to misstate the scope of the certification order, mischaracterize Plaintiff's claims, mischaracterize the factual record, and does not come close to showing any error by the district court, let alone one that makes reversal "virtually certain."

First, Plaintiff's claims that EQT underpaid royalties are tort claims, and the district court certified them under Rule 23(b)(3), not Rule 23(b)(2), as EQT argues. *See* Pet. at 17. There is no ambiguity on this point. Addressing the underpayment claims, the district court held, "I find that the plaintiffs, at this stage, have provided sufficient evidence to meet the requirements of Rule 23(b)(3)." Op. at 71.

Second, EQT's assertion that Plaintiff "presented no evidence to support his royalty calculation claims," or that they are amenable to class-wide adjudication (Pet. at 17), is flatly false, as even a cursory review of the district court's opinion reveals. The district court took note of evidence from the record that EQT sold its gas to an affiliate (Op. at 31); that EQT takes volumetric deductions on the sale of gas, and that it sells and pays royalties on less than it produces from Plaintiff's and class members' wells (Op. at 34); and that EQT deducts severance taxes before calculating royalty payments (Op. at 44). The court also catalogued the multitude of errors and

mismanagement of escrow deposits (Op. at 24-30), and noted testimony from EQT's corporate representative regarding failures to pay royalties into escrow (Op. at 50). The district court also took note of EQT's uniform royalty methodology (Op. at 43), such that all of EQT's deductions are taken pursuant to the uniform terms of the pooling orders, which allows for a class-wide determination of the appropriateness of the deductions.  EQT may ultimately prevail (or not) on Plaintiffs' straightforward tort claims, but it has identified nothing in the decision certifying those claims that merits interlocutory review.

### F.    The Status of the Case Weighs Against Granting EQT's Petition.

EQT ignores the advanced stage of this case and Plaintiff's pending summary judgment motions, both of which are relevant factors under *Lienhart*, 255 F.3d at 144. Both reveal the inefficiencies that interlocutory appeal would create in this case.  In its explanation of how the "nature and status of the litigation" affect review of a Rule 23(f) petition, the Eleventh Circuit, in the case that the *Lienhart* court extensively discussed, singled out the presence of motions that "may significantly redefine the issues in the case and thereby affect the scope of or need for a class."  *Prado-Steiman v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000).  Thus, a court should consider "the status of discovery, the pendency of relevant motions, and the length of time the matter already has been pending."  *Id.*

Here, fact discovery is nearing completion, and Plaintiff has moved for summary judgment on the central claim in the case.  It would make little sense for this Court to grant EQT's interlocutory appeal now, only to be presented with other related and seriatim appeals after the district court rules on those pending dispositive motions, and then again after the upcoming trial verdict.

## V.  <u>Conclusion</u>

The district court's careful and thorough application of Rule 23 to this case contains no error, let alone one that makes reversal a "functional certainty."  EQT's objections to the opinion concern either common factual questions to be resolved by a jury, or matters of case management that fall squarely within the district court's exercise of discretion.  This Court should deny EQT's petition for leave to appeal.

Respectfully submitted,

Dated:  October 24, 2013.

LIEFF CABRASER HEIMANN &
   BERNSTEIN, LLP

By: <u>*/s/ David S. Stellings*</u>
David S. Stellings
Daniel E. Seltz
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592
dstellings@lchb.com
dseltz@lchb.com

Elizabeth Alexander
LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
One Nashville Place
150 Fourth Avenue North
Suite 1650
Nashville, TN 37219
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965
ealexander@lchb.com

Larry D. Moffett
DANIEL COKER HORTON &
    BELL, P.A.
265 North Lamar Blvd., Suite R
P. O. Box 1396
Oxford, MS 38655
Telephone:  (662) 232-8979
Facsimile:  (662) 232-8940
lmoffett@danielcoker.com

Peter G. Glubiak, VSB #31271
GLUBIAK LAW OFFICE
P.O. Box 27
King William, VA 23086
Telephone:  (804) 769-1616
Facsimile:  (804) 769-1897
glubiaklaw@aol.com

Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
ecabraser@lchb.com

Charles F. Barrett
CHARLES BARRETT, P.C.
6518 Highway 100, Suite 210
Nashville TN 37205
Telephone:  (615) 515-3393
Facsimile:  (615) 515-3395
charles@cfbfirm.com

Don Barrett
David M. McMullan, Jr.
Brian Herrington
Katherine B. Riley
BARRETT LAW GROUP, P.A.
404 Court Square North
P.O. Drawer 927
Lexington, MS  39095
Telephone:  (662) 834-2488
Facsimile:  (662) 834-2628
dbarrett@barrettlawgroup.com
dmcmullan@barrettlawgroup.com
bherrington@barrettlawgroup.com
kbriley@barrettlawgroup.com

Richard R. Barrett
LAW OFFICES OF RICHARD R.
BARRETT, PLLC
2086 Old Taylor Road, Suite 1011
Oxford, MS 38655
Telephone:  (662) 380-5018
Facsimile:  (866) 430-5459
rrb@rrblawfirm.net

Jackson S. White, Jr., VSB #03677
THE WHITE LAW OFFICE
P. O. Box 286
Abingdon, VA 24212
Telephone:  (276) 619-3831
Facsimile:  (815) 550-2930
jackwhite@whitelawoffice.com

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND
## TYPE-STYLE REQUIREMENT

1.      This brief complies with the page limitation of Fed. R. App. P. 5 because this brief does not exceed 20 pages, excluding those parts of the brief exempted by Fed. R. App. P. 5.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word in Times New Roman 14-point font.

This the 24th day of October, 2013.

*/s/ David S. Stellings*
David S. Stellings
*Attorney for Respondent-Plaintiff*
*and the Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel does hereby certify that the foregoing was filed with

the Clerk of Court using the CM/ECF system and copies were served via email and

first class mail on the following counsel of record for Defendant-Petitioner:

Stephen M. Hodges
Wade W. Massie
Mark E. Frye
Penn, Stuart & Eskridge
208 East Main Street
Abingdon, Virginia 24210
Telephone: 276/628-5151

Michael W. Smith
R. Braxton Hill, IV
Christian & Barton
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: 804/697-4100

This the 24th day of October, 2013.

*/s/ Daniel E. Seltz*
Daniel E. Seltz

1137291.1